IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

LAMAR KEMP                                                                           PLAINTIFF

v.                                              Civil No. 6:17-cv-06084

CORRECT CARE SOLUTIONS, INC.; DR.
NANNETTE VOWELL; and HEALTH SERVICES
ADMINISTRATOR ANDREA BEASLEY                     DEFENDANTS

**<u>MEMORANDUM OPINION</u>**

This is a civil rights action filed *pro* se by Plaintiff, Lamar Kemp, under 42 U.S.C. § 1983. Before the Court is a Motion for Summary Judgment filed by Defendants Correct Care Solutions, LLC, Dr. Nannette Vowell, and Andrea Beasley.[1] (ECF No. 36). Plaintiff has filed a Response and Supplement to Response. (ECF Nos. 43, 63). Defendants have filed a Reply. (ECF No. 49). Plaintiff filed a sur-reply. (ECF No. 57). The Court finds this matter ripe for consideration.

**I. BACKGROUND**

Plaintiff's claims in this action arise from alleged incidents that occurred between September 20, 2013, and August 2017 while he was incarcerated in the Arkansas Department of Correction's ("ADC") Ouachita River Correctional Unit ("ORCU").[2] Viewed in the light most favorable to Plaintiff, the relevant facts are as follows.

Plaintiff suffered a spinal cord injury in 1969. (ECF No. 37, ¶ 42). Over time, his physical condition has deteriorated and he suffers from weakness on his left side and foot drop. One of

---

[1] Correct Care Solutions, LLC is improperly referenced in the caption of the case as Correct Care Solutions, Inc.
[2] Plaintiff remains incarcerated in the ORCU to date.

Plaintiff's legs is shorter than the other, he suffers from extreme pain, and has difficulty standing or walking. (ECF No. 37-4, p. 14). Plaintiff has been using a wheelchair since sometime in 2011. (ECF No. 37-2, pp. 20-22). In 2012, he was fitted for and received an ankle/foot brace and shoes. Plaintiff describes these shoes as high-top sneakers that enable him to use his brace and help him move about in his wheelchair. (ECF No. 37-5, p. 25). In 2013, Plaintiff began experiencing symptoms of kidney failure. (ECF No. 37-5, pp. 52-53). Plaintiff was transferred to the ORCU from the Tucker Unit of the ADC on September 20, 2013, in part so that the medical team could monitor his kidneys to see if he needed dialysis.[3] Prior to being transferred to the ORCU, Plaintiff used his wheelchair, brace, and wore his shoes regularly to assist him with mobility. When Plaintiff was transferred to the ORCU, his high-top shoes were not sent with him.[4]

Sometime in November or December of 2013, Dr. Nanette Vowell called Plaintiff to the day clinic and ordered Plaintiff to get out of his wheelchair and walk. Plaintiff stood up but refused to try and walk on the cement floor without his high-top shoes. As a result, the wheelchair was taken from him. (ECF No. 1, p. 6). Dr. Vowell informed Plaintiff that he did not need tennis shoes if he was going to primarily use the wheelchair. *Id.* Plaintiff was then sent to lockup without his wheelchair. In December of 2013, Plaintiff wrote to the Spinal Cord Commission explaining that his wheelchair had been taken from him by Dr. Vowell. In February of 2014, Plaintiff was issued a wheelchair by the Spinal Cord Commission.

Plaintiff's medical records indicate he was prescribed 50 milligrams of Tramadol and 300 milligrams of Gabapentin for pain beginning in 2014. (ECF No. 37-4, p. 14). Plaintiff took each

---

[3] Plaintiff began undergoing dialysis in February 2015.
[4] Plaintiff testified in his deposition that he was told by someone at the Tucker Unit he would receive new shoes at the ORCU. (ECF No. 37-5, p. 31).

of these medications three times a day until sometime in 2017. (ECF No. 37-5, pp. 46-47). At some point, Dr. Vowell discontinued Plaintiff's Tramadol and reduced his dosage of Gabapentin. The medical records are not clear as to exactly when or why Dr. Vowell made a change to Plaintiff's pain medication. Plaintiff is no longer taking any medication for pain even though he has a prescription for Gabapentin because he claims the decreased dosage does not work. (ECF No. 37-5, p. 55).

Sometime in April 2017, Plaintiff met with Andrea Beasley about starting physical therapy, so he could work on his leg strength and reevaluate his need for shoes. Beasley measured Plaintiff for shoes and told him he would begin physical therapy classes on April 9, 2017. Despite Beasley's statements, Plaintiff was never permitted to participate in physical therapy and was not issued high-top shoes. (ECF No. 37-5, pp. 98-99). Beasley is not a doctor and never provided medical care to Plaintiff. *Id.* at 98. Plaintiff states that Beasley "gripes at me at everything." *Id.* at 95.

Between September 20, 2013, and August 25, 2017, Plaintiff filed the following fourteen formal medical grievances:

(1) OR-14-01023 requesting his "size 8 ½ high top Reebok tennis shoes prescribed by doctors" be ordered. Plaintiff states he has braces made for him by Felix Limb and Brace and he can't use his leg brace with the shoes he was issued at the ORCU. (ECF No. 37-2, pp. 1-3).

(2) OR-15-00110 claiming his "14th Amendment Rights were being violated" and stating he needed help controlling his high blood pressure. (ECF No. 37-2, pp. 4-6).

(3) OR-15-00659 concerning a request for a restriction to keep Plaintiff from serving punitive time in isolation due to the heat. Plaintiff states his nerves are bad from his spinal injury and the heat aggravated his sinuses. (ECF No. 37-2, pp. 7-9).

(4) OR-15-00660 regarding a nurse "angrily" placing a bandage on a wound and rushing him out of the infirmary. (ECF No. 37-2, pp. 10-12).

(5) OR-15-00708 regarding health complications from exposure to heat. (ECF No. 37-2, pp.

3

13-16).

(6) OR-15-00878 requesting a "heat script." (ECF No. 37-2, pp. 17-19).

(7) OR-16-01099 submitted June 25, 2016, stating "with footwear I'll no longer ambulate by wheelchair, look I use my foots everywhere I go. No leg rest." Plaintiff again requests medical footwear (tennis shoes) previously prescribed. On August 23, 2016, a response to the grievance was submitted which states "[t]he provider determines your medical needs. You have been in a wheelchair since 2011 due to left sided weakness and back issues. The provider does not provide medical footwear to patients in wheelchairs that are long term." (ECF No. 37-2, pp. 20-22).

(8) OR-16-01125 claiming Dr. Vowell denied Plaintiff medical shoes and the opportunity to see Dr. Felix, a specialist. Plaintiff stated he has spinal cord damage, can partially walk and is working to be able to walk. He stated he has had tennis shoes since 1992 prescribed by an ADC doctor and "Dr. N. Vowell states I don't walk, I don't need shoes, yet [I'm] not restricted to this wheelchair for it has no leg handles so [I'm] forced to use my [feet] everyday. I [was] issued shoes on every Unit (Diagnostic, Work Complex, JCJ-CF, Cummins, Varner, Brickeys, Dermott, Tucker Maximum Security, all in Medical Jacket or Computer. Please view Medical Jacket and instruct medical [personnel] to issue me either self sole or tennis shoes[.]" (ECF No. 37-2, pp. 22-25).

(9) OR-16-01588 grievance relating to change/termination of pain medications. (ECF No. 37-2, pp. 26-28).

(10) OR-17-00190 complaining that Dr. Vowell acted with deliberate indifference to Plaintiff's medical needs by failing to treat and diagnose his pain and refusing to allow him to see a foot specialist. (ECF No. 37-2, pp. 29-31).

(11) OR-17-00510 stating that Nurse Robinson intercepted and returned 95% of Plaintiff's requests, no matter to whom they are addressed. (ECF No. 37-2, pp. 32-34).

(12) OR-17-00511 regarding denial of footwear and the weakness of his feet. (ECF No. 37-2, pp. 35-37).

(13) OR-17-00512 regarding pain and suffering Plaintiff was experiencing while waiting to receive proper medical care at ORCU and complaining he had been denied medical footwear. (ECF No. 37-2, pp. 38-40).

(14) OR-17-00727 claiming Dr. Vowell took his wheelchair from him, denied his numerous medical requests, took him off his pain medication, and refused to provide blood pressure medicine. (ECF No. 37-2, pp. 41-44).

Plaintiff filed his Complaint on August 25, 2017, against Correct Care Solutions, LLC

("CCS"), Dr. Nannette Vowell, Andrea Beasley, Gwendolyn Hart, Rory Griffin and Wendy Kelly. (ECF No. 1). Plaintiff alleges Defendants denied him medical care, violated his rights under the Americans With Disabilities Act, and retaliated against him for filing medical grievances. Plaintiff also asserts a claim for medical malpractice under state law.[5] *Id.* at p. 15. Specifically, Plaintiff alleges that Defendant Vowell denied him medical care when she took his wheelchair from him in late 2013, refused to issue him previously prescribed medical shoes,[6] reduced his pain medications in 2017, and retaliated against him for contacting the Spinal Cord Commission and filing medical grievances against her. Plaintiff alleges Defendant Beasley told him he would be starting physical therapy which never happened and she "gripes" at him. Plaintiff sues Defendants in their official and individual capacities and seeks compensatory and punitive damages. *Id.* at p. 14.

On May 14, 2018, Defendants CCS, Vowell, and Beasley filed the instant motion. Defendants argue they are entitled to summary judgment because: (1) Plaintiff's claims arising prior to August 25, 2014, are barred by the statute of limitations; (2) Plaintiff failed to exhaust his administrative remedies; (3) Defendants were not deliberately indifferent to Plaintiff's medical needs; and (4) there is no basis for official capacity liability. (ECF No. 36). Plaintiff filed his Response to the motion for summary judgment arguing there are genuine issues of material fact regarding Plaintiff's claims for denial of medical care and that Defendants failed to address Plaintiff's claims for retaliation and medical malpractice. (ECF No. 43). Defendants filed a Reply

---

[5] Plaintiff's claims against Defendants Griffin and Kelly were dismissed on November 9, 2017. (ECF No. 23). Plaintiff's claims against Defendant Hart were dismissed on February 14, 2018. (ECF No. 26). On June 20, 2018, Plaintiff's claim for violation of the Americans With Disabilities was dismissed. (ECF No. 52).

[6] Several months after Plaintiff filed this lawsuit, he was evaluated by Dr. Felix, an outside prosthetist/orthotist, and shoes were ordered for him. Plaintiff was not satisfied with the shoes because they slipped off his feet. (ECF No. 37-5, pp. 19-20).

arguing that Plaintiff's claim for retaliation should be dismissed as a matter of law and Plaintiff's claim for malpractice should be dismissed because Plaintiff has failed to provide any expert testimony regarding the applicable standard of care and the causal link to damages. (ECF No. 49).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. DISCUSSION

### A. Statute of Limitations

Defendants argue that Plaintiff's claim against Defendant Vowell for taking away his wheelchair is barred by the statute of limitations. The statute of limitations for Plaintiff's claims is three years from the date the alleged incidents occurred. *See, e.g.*, *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001) (applying three-year statute of limitations to § 1983 claim); *Morton v. City of Little Rock*, 934 F.2d 180, 182 (8th Cir. 1991) (holding that the applicable statute of limitations for a § 1983 action in Arkansas is three years).

Plaintiff filed his Complaint on August 25, 2017. (ECF No. 1). However, the claimed deprivation of his wheelchair occurred in November or December of 2013, more than three years prior to the date he filed his Complaint. Accordingly, Plaintiff's claim against Defendant Vowell for taking his wheelchair from him in 2013 is barred by the statute of limitations and Defendants are entitled to summary judgment on this issue.

### B. Failure to Exhaust Administrative Remedies

Defendants argue that Plaintiff failed to exhaust his administrative remedies on his claims regarding the change in his pain medication. They also claim Plaintiff did not submit any grievances against Defendant Beasley and therefore all claims against her should be dismissed for failure to exhaust administrative remedies.

The Prison Litigation Reform Act ("PLRA") at 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is mandatory. *Porter v.*

*Nussle*, 534 U.S. 516, 524-25 (2002). In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded that "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id*. at 218 (internal quotation marks and citation omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. "[F]ailure to exhaust available administrative remedies is an affirmative defense, not a matter of subject matter jurisdiction." *Lenz v. Wade*, 490 F.3d 991, 993 n.2 (8th Cir. 2007).

The Eighth Circuit has recognized two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures and (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (citing *Miller*, 247 F.3d at 740 (explaining a prisoner is only required to exhaust those administrative remedies that are available and any remedies that prison officials prevent a prisoner from utilizing are not considered available)).

There is no dispute that the ORCU has an extensive grievance procedure in place for inmates to use and that this procedure has been in place since Plaintiff was transferred to the unit in 2013. (ECF No. 37-1, pp. 1-29). This grievance policy states in part "[i]nmates are hereby advised that they must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit. . . . If this is not done, their lawsuit or claims may be dismissed immediately." *Id.* at p. 17. According to the affidavit of Shelly Byers, the ADC's Medical Grievance Coordinator, when an inmate files a medical grievance at the unit level the grievance is forwarded to the appropriate medical personnel for a response. Whether or not an inmate receives a response from the medical department the inmate must continue the

8

grievance process by appealing to the office of the Deputy Director for Health and Correctional Programs. Upon receiving an appeal, the Deputy Director reviews the grievance along with any records that are necessary to respond. The Deputy Director's response, which is the final step of the process, is then provided to the inmate. (ECF No. 37-3, pp. 1-2).

Here, Plaintiff filed fourteen medical grievances. Five of those grievances involve claims unrelated to this lawsuit.[7] Defendants concede that Plaintiff completed the ORCU's grievance process with respect to four grievances involving his claim that he was denied medically necessary shoes that had been previously issued to him at other ADC units. (ECF No. 37-3, p. 2, stating Plaintiff completed the grievance process for OR-14-01023, OR-16-01125, OR-17-00511, and OR-17-00512). However, the record reflects Plaintiff failed to appeal the following grievance decisions as required by the ORCU's policy:

(1) OR-16-01099 requesting medical shoes (ECF No. 37-2, pp. 20-22);

(2) OR-16-01588 relating to Defendant Vowell's decision to change and terminate his pain medication (ECF No. 37-2, pp. 26-28);

(3) OR-17-00190 complaining that Defendant Vowell failed to treat his pain and refused to allow him to see a foot specialist (ECF No. 37-2, pp. 29-31); and

(4) OR-17-00727 relating to denial of medical care by Defendant Vowell including taking of wheelchair, terminating medication, and discrimination (ECF No. 37-2, pp. 41-44).

The ORCU's grievance procedure requires all inmates to appeal their grievance decisions to the Deputy Director for Health and Correctional Programs in order to complete the grievance

---

[7] Plaintiff's grievances unrelated to this lawsuit include: OR-15-00110 relating to blood pressure medication (ECF No. 37-2, pp. 5-6); OR-15-00659 requesting a restriction from serving punitive time in the heat (ECF No. 37-2, pp. 7-9); OR-15-00660 involving a nurse "angrily" putting a bandage on Plaintiff and rushing him out of the infirmary (ECF No. 37-2, pp. 10-12); OR-15-00708 regarding health complications from exposure to heat; (ECF No. 37-2, pp. 13-16); and OR-15-00878 requesting a "heat script." (ECF No. 37-2, pp. 17-19).

9

process. Plaintiff did not appeal the grievance decisions relating to the change in his pain medication. In addition, the record confirms that Plaintiff failed to file any grievances against Defendant Beasley. Therefore, Plaintiff did not complete the grievance procedure as to his claims regarding pain medication or his claims against Defendant Beasley. Moreover, Plaintiff has not alleged that any Defendant prevented him from utilizing the grievance procedure or that they failed to comply with the procedure itself. Thus, neither of the exceptions to the PLRA's exhaustion requirement apply.

Accordingly, Defendants are entitled to summary judgment on all of Plaintiff's claims against Defendant Beasley and his claims against Defendant Vowell for changing his pain medication.[8]

### C. Denial of Medical Care

Plaintiff's only remaining claim based on the denial of medical care is that Defendant Vowell was deliberately indifferent to his medical needs when she repeatedly refused to provide him with high-top shoes which he had used at other ADC units.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendant Vowell acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded

---

[8] Claims that are dismissed for failure to exhaust administrative remedies should be dismissed without prejudice. *See Sergent v. Norris*, 330 F.3d 1084, 1085 (8th Cir. 2003).

those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). To establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id*.

The standard of deliberate indifference is not met by the exercise of professional judgment in refusing to implement an inmate's requested course of treatment. *Vaughn v. Gray*, 557 F.3d 904, 908-09 (8th Cir. 2009). Nor is the standard met by demonstrating a doctor committed medical malpractice. *Jackson v. Buckman*, 756 F.3d 1060, 1065-66 (8th Cir. 2014). To constitute deliberate indifference, "[a]n inmate must demonstrate that a prison doctor's actions were so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Id*. However, intentionally denying or delaying access to medical care may constitute deliberate indifference. *Estelle*, 429 U.S. at 104-05; *Dulany*, 132 F.3d at 1239.

In the case at bar, Defendants do not dispute that Plaintiff has a serious medical condition. Indeed, the record demonstrates Plaintiff's condition was serious enough to warrant the issuance of a wheelchair, high-top shoes that would not slip off his feet, and an ankle/foot brace by medical personnel at other ADC units. Accordingly, the Court assumes for purposes of this opinion that

11

Plaintiff suffers from a serious medical condition. The question before the Court now becomes whether Defendant Vowell's actions, or lack thereof, rose to the level of a constitutional violation.

As previously stated, deliberate indifference may be demonstrated by prison officials who intentionally deny or delay access to medical care. Moreover, deliberate indifference has been found where a physician abruptly discontinued an inmate's medication without an adequate evaluation of the inmate or his medical records. *See, e.g.*, *Mace v. Johnson*, 2014 WL 538580 (D. Minn. Feb. 11, 2014) (citing *Steele v. Shah*, 87 F.3d 1266, 1267 (11th Cir. 1996)); *Taylor v. Garrett*, Case No. 07-cv-5034, 2008 WL 4216119 (W.D. Ark. Sept. 10, 2008) (finding a question of fact precluding summary judgment where the cessation of anti-anxiety medication was done without an individual evaluation of the inmate).

Plaintiff testified in his deposition, and the medical records reflect, that Defendant Vowell was aware that Plaintiff had been previously issued a wheelchair, high-top shoes, and a foot brace by ADC medical personnel several years before being transferred to the ORCU. Plaintiff also made clear to Defendant Vowell that he needed his high-top shoes so he could move around in his wheelchair—which did not have "foot handles"—and so he could continue to utilize his ankle/foot brace. Despite this information, Defendant Vowell told Plaintiff if he used a wheelchair his high-top shoes were unnecessary. In addition, Plaintiff has provided the Court with affidavits from three other inmates who are receiving treatment by Defendant Vowell. (ECF No. 44-1, pp. 1-3). Two of these affidavits indicate that other inmates who use wheelchairs are being provided specialized footwear which has been denied to Plaintiff.

Accordingly, the Court finds there are genuine issues of material fact as to whether Defendant Vowell's refusal to provide Plaintiff with high-top shoes that had been previously issued to him by an ADC physician constitutes deliberate indifference to Plaintiff's serious medical

needs. Therefore, Defendants' motion for summary judgment on Plaintiff's claim of inadequate medical care should be denied.

**D. State Law Claim for Medical Malpractice**

Plaintiff asserts a claim for medical malpractice against Defendant Vowell.[9] Defendants argue they are entitled to summary judgment on this claim because Plaintiff has not provided any expert testimony to establish the standard of care or the causal link to any damages he has suffered. (ECF No. 49, p. 2).

Plaintiff's claim that he was denied medical care when Defendant Vowell repeatedly refused to issue him high-top shoes is governed by the Arkansas Medical Malpractice Act. Under Arkansas law, in an action for medical injury a plaintiff must prove the applicable standard of care and a deviation from that standard, unless the alleged negligence is a matter of common knowledge. Ark. Code Ann. § 16-114-206 (a)(1)-(3). This statute provides in relevant part:

> (a) In any action for medical injury, when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge, the plaintiff shall have the burden of proving:
>
> (1) By means of expert testimony provided only by a medical care provider of the same specialty as the defendant[10], the degree of skill and learning ordinarily possessed and used by members of the profession of the medical care provider in good standing, engaged in the same type of practice or specialty in the locality in which he or she practices or in a similar locality;

---

[9] As noted above, Plaintiff's claim for medical malpractice against Defendant Beasley warrants dismissal because he failed to exhaust his administrative remedies. Accordingly, the Court will not discuss Plaintiff's medical malpractice claim against Defendant Beasley.

[10] In *Broussard v. St. Edward Mercy Health System, Inc.*, 386 S.W.3d 385 (Ark. 2012), the Arkansas Supreme Court struck down the requirement that the expert testimony be provided only by a medical care provider of the same specialty as the defendant. The remainder of § 16-114-206 (a) (1) and (2) was unaffected and remains controlling law in this case.

> (2) By means of expert testimony provided only by a medical care provider of the same specialty as the defendant that the medical care provider failed to act in accordance with that standard; and
>
> (3) By means of expert testimony provided only by a qualified medical expert that as a proximate result thereof the injured person suffered injuries that would not otherwise have occurred.

*Id.* (footnote added). The Arkansas Supreme Court has stated that it is "well settled" that "a plaintiff must present expert testimony when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge, when the applicable standard of care is not a matter of common knowledge, and when the jury must have the assistance of experts to decide the issue of negligence." *Robson v. Tinnin*, 911 S.W.2d 246, 249 (Ark. 1995). When expert testimony is required for proof of a plaintiff's claim for medical malpractice, and the defendants demonstrate the plaintiff has failed to produce the requisite expert testimony, then the defendants have demonstrated that no genuine issues of material fact exist for presentation to a jury, and defendants are entitled to judgment as a matter of law. *Id.* at 250.

Here, Plaintiff argues that he is not required to produce expert testimony because the question of whether Defendant Vowell was negligent when she failed to provide him with high-top sneakers so he could utilize his leg brace and move around in his wheelchair lies within a jury's comprehension as a matter of common knowledge. (ECF No. 57, pp. 1-2). Plaintiff also states:

> after four plus years of pleading by the Plaintiff [for high-top shoes] following the filing of this legal action . . . the Defendants did finally provide Plaintiff with footwear . . . although horribly inappropriate 'Edward' shoes, and ignoring Dr. Felix's unmistakable command to schedule for immediate follow up to see if the shoes would 'work'[.]

*Id.*

Plaintiff's argument that expert testimony is not necessary in this case to demonstrate medical malpractice is without merit. First, the majority of cases in Arkansas hold that expert

medical testimony is necessary because alleged medical negligence is not within the comprehension of a jury of laymen. *See Fryar v. Touchstone Physical Therapy, Inc.*, 229 S.W.3d 7, 12-13 (Ark. 2006) (connection between pre-existing neck and spine injuries and alleged injuries caused by an unlicensed chiropractor's treatment "would not be a matter of common knowledge or understanding"); *see also Eady v. Lansford*, 92 S.W.3d 57 (Ark. 2002) (expert testimony required to rebut defense testimony regarding whether physician has a duty to inform a patient about rare side effects of medication); *Tinnin, supra* (matters relating to changing of dental implants and treatment of fractured teeth are not matters of common knowledge); *Davis v. Kemp,* 481 S.W.2d 712 (Ark. 1972) (whether it was proper or improper on first medical visit to irrigate wound and administer antibiotics was not matter of common knowledge, and failure to find piece of glass on first visit would hinge upon whether or not good medical practice required the probing of wound on first visit); *but see, Watts v. St. Edward Mercy Med. Ctr.*, 49 S.W.3d 149 (Ark. Ct. App. 2001) (no need to provide expert testimony on issue of whether a broken hip can cause pain); *Lanier v. Trammel*, 180 S.W.2d 818 (Ark. 1944) (no expert testimony required where surgeon failed to sterilize his instruments and failed to remove sponge from the patient's incision before closing it).

In the alternative, Plaintiff argues that Dr. Felix's recommendation regarding Plaintiff's need for medical shoes should suffice as expert testimony to support his claim of malpractice. However, the Arkansas Supreme Court has stated that "mere statements of what treatment should or should not have been provided do not qualify as statements setting forth the applicable standard of care." *Mitchell v. Lincoln*, 237 S.W.3d 455, 459 (Ark. 2006); *Fryar, supra* (affirming summary judgment and holding that in action for medical malpractice, "questions of fact" regarding the

treatment rendered will not prevent summary judgment without some explanation of their significance, as it relates to the standard of care, by an expert witness); *Tinnin*, *supra* (rejecting argument that assumed that "simply because treatment is available for a medical injury, it follows that it is negligence for a medical care provider not to provide the treatment"). The Eighth Circuit has also applied expert affidavit requirements derived from state law to medical malpractice claims filed under the Federal Tort Claims Act ("FTCA"). *See Bellecourt v. United States*, 994 F.2d 427 (8th Cir. 1993) (affirming dismissal of prisoner's medical malpractice claims filed under the FTCA because the prisoner failed to present an expert affidavit as required by Minnesota law). Based on these precedents, the Court finds that Dr. Felix's recommendation that Plaintiff needs medical shoes does not qualify as expert testimony.

Because Plaintiff does not have expert testimony to demonstrate the appropriate standard of care, a deviation therefrom, or a causal link to damages, Defendants are entitled to summary judgment on Plaintiff's claim for medical malpractice.

**E. Retaliation**

Plaintiff alleges Defendant Vowell retaliated against him for contacting the Spinal Cord Commission concerning his wheelchair and filing multiple medical grievances when she continually refused to provide him with medical footwear.[11]

The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity. *Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir. 1994). In general, "[c]onduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the

---

[11] As discussed above, Plaintiff's claims for retaliation against Defendant Vowell relating to his pain medication and his claims for retaliation against Defendant Beasley warrant dismissal for failure to exhaust his administrative remedies. Accordingly, the Court need not further discuss those claims.

conduct would have been proper if motivated by a different reason." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001) (citing *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990)). The retaliatory conduct itself need not be a constitutional violation in order to be actionable. Additionally, there is no independent injury requirement when retaliatory conduct is involved. *See Dixon*, 38 F.3d at 380.

To prevail on his retaliation claim, Plaintiff must demonstrate: (1) he engaged in protected activity; (2) Defendants responded with adverse action that would "'chill a person of ordinary firmness' from continuing in the activity;" and (3) the adverse action was motivated at least in part by exercise of the protected action. *See L.L. Nelson Enter. Inc. v. Cnty. of St. Louis, Mo.*, 673 F.3d 799, 807-08 (8th Cir. 2012) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).

First, there is no question Plaintiff engaged in a protected activity when he submitted medical grievances requesting shoes which had been issued by previous ADC units. However, the fact that Plaintiff filed additional medical requests after Defendant Vowell denied Plaintiff's requests for shoes demonstrates her conduct did not "chill" Plaintiff from continuing in the protected activity.

Accordingly, Plaintiff's claim for retaliation fails as a matter of law and Defendants are entitled to summary judgment on this issue.

### F. Official Capacity Claims

Plaintiff also sues Defendants in their official capacities. When a government contracts with a third-party to fulfill a constitutional duty—such as providing medical care—official capacity claims against the third-party's employees are treated as claims against the third-party itself. *See Cannady v. Cradduck*, 2016 WL 4432704, at *1-2 (W.D. Ark. Aug. 18, 2016) (finding

17

that official capacity claims against employees of third party medical provider are treated as claims against the company because county contracted with the company to provide healthcare to county inmates). To sustain an official capacity claim against such an entity a plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (involving a § 1983 claim against a prison medical provider); *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993) ("[A] corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies."). Thus, Plaintiff's official capacity claims against Defendants Vowell and Beasley are "functionally equivalent" to alleging that their employer, CCS, had "a policy, custom, or [took an] official action" that deprived him of constitutionally adequate medical care. *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010); *Johnson*, 452 F.3d at 973.

Here, Plaintiff has failed to produce evidence of any policy or custom of CCS that contributed to the alleged violation of Plaintiff's constitutional rights. Plaintiff's allegations concerning official capacity merely consist of a recitation of the ways he believes his constitutional rights were violated by the individual actions, or lack thereof, by Defendants Vowell and Beasley. Accordingly, Plaintiff has failed to state a claim against Defendants in their official capacities and, accordingly, those claims should be dismissed.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Defendants' Motion for Summary Judgment (ECF No. 36) should be and hereby is **GRANTED IN PART** and **DENIED IN PART**.

Defendants' Motion for Summary Judgment is **GRANTED** as to the following claims:

18

(1) Plaintiff's individual capacity claims against Defendant Vowell for denial of a wheelchair in 2013 and retaliation. These claims are hereby **DISMISSED WITH PREJUDICE**;

(2) Plaintiff's individual capacity claims against Defendant Vowell for terminating or changing his pain medication and his claim under the Arkansas Medical Malpractice Act. These claims are hereby **DISMISSED WITHOUT PREJUDICE**;

(3) Plaintiff's claims against Defendant Beasley. These claims are hereby **DISMISSED WITHOUT PREJUDICE**;

(4) All official capacity claims. These claims are hereby **DISMISSED WITH PREJUDICE**.

Defendants' Motion for Summary Judgment is **DENIED** as to Plaintiff's claim against Defendant Vowell for denying him high-top shoes to use with his ankle brace and wheelchair. This claim shall remain for resolution.

**IT IS SO ORDERED**, this 13th day of December, 2018.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge